## (April 29, 1980)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GASTON, Appellant.—Judgment, Supreme Court, New York County, rendered November 14, 1978, convicting defendant after a jury trial of criminal sale of a controlled substance in the third degree and sentencing him to an

indeterminate term of three years to life, reversed, on the law and the facts, and the matter remanded for a new trial. The only evidence of the drug purchase that led to this conviction was provided at the trial by an undercover policeman. He testified: that he saw defendant standing on a street corner and asked him if he had seen Little Eddie, a name he had made up; that defendant said he had not and asked him if he wanted "coke"; that he replied, "Yes, three dimes", meaning three $10 packets; that a marked police car passed and the two separated; that he returned to the corner five minutes later where he met defendant who was accompanied by one Beane; that defendant asked for the money and he gave him a $20 and a $10 bill, the serial numbers of which had been recorded; that defendant gave the money to Beane, who handed three packets of cocaine to defendant who gave it to him; that as he was walking away defendant followed him and asked for more money; that he gave him three dollars, the numbers of which had been recorded. A member of the backup team testified that defendant and Beane were arrested within 15 minutes. The three dollars were found on defendant but the $30 was not on Beane. The defense rigorously cross-examined the undercover officer in an attempt to portray his testimony as improbable. It presented no witnesses of its own. The jury was free to accept or reject any part of the undercover policeman's testimony (*People v Johnson,* 45 NY2d 546). Consequently, it was within a reasonable view of the evidence (see *People v Malave,* 21 NY2d 26) for it to have found that the defendant was merely an observer of the sale, and to have rejected the testimony that he was an integral part of the transaction. That the jury might have held such a view is underscored by its report to the court that several of its members could not accept all of the undercover's testimony and by its request for more instruction on intent to sell. By this request the jury asked, "Does the observing of a sale of drugs and knowing the act to be illegal on the part of an observer, does that automatically incorporate intent to sell on the part of the observer". There can be no doubt that in the context of the trial the jury, in using the word "observer", meant the defendant, but in its answer the court charged, *inter alia,* "there is no observer as far as the court can make out in this particular case * * * when you are using the word 'observer' we are dealing now into hypothetical matters. We can only, you can only evaluate the facts in this particular case". By this direction the court wrongfully imposed its view of the evidence upon the jury and inhibited any possible resolution in the defendant's favor. We find this reversible error. Concur—Murphy, P. J., Kupferman, Sandler, Lupiano and Lynch, JJ. Murphy, P. J., and Lupiano, J., concur in a memorandum by Lupiano, J.; and Kupferman and Sandler JJ., concur in a separate memorandum by Sandler J., as follows.

Lupiano, J. (concurring). I join in the view expressed by the majority and would add the following as an additional cumulative predicate for reversal of the judgment and remanding of the matter for a new trial. First, on this record as I view it, sale is not the only permissible inference to be drawn. The trial court's refusal to submit to the jury the simple possession charge, ruling that this matter was simply a "sale or no sale", was error. It must be noted that the defendant did not negotiate the price, the seller Beane delivered the drugs and walked away with the purchase money, and defendant obtained a "tip" from the undercover officer. Second, while not of itself determinative, the fact that the jury reported itself deadlocked on this rather simple case on several occasions and spent one night in a hotel looms significant in light of the rapidity with which a determination was reached when the jury was informed at about 5:00 P.M. that it would be sequestered

for a second night. Fifteen minutes later, the jury returned its guilty verdict. A latent suggestion of coercion arises from these circumstances. Of course, apart from the other issues, the overtone of coercion of itself is clearly insufficient to warrant overturning the jury verdict. It is in conjunction with these other issues, assuming their viability, that the overtone of coercion achieves some significance.

Sandler, J. (concurring). I agree that the conviction should be reversed for the reason set forth in the court's memorandum, and I also agree with Judge Lupiano's concurring opinion to the extent that he views as error the failure to submit to the jury the simple possession charge.